## Levi Parker *vs.* William Simonds.

Under the Rev. Sts. *c.* 113, a defendant in replevin, who obtains a judgment for a return of the goods replevied, and sues out a writ of return, upon which the offi cer returns that he cannot find the goods, may maintain an action on the replevin bond, without first suing out a writ of reprisal.

A plaintiff in replevin, against whom a judgment is obtained for a return of the goods replevied, is bound by the bond prescribed by the Rev. Sts. *c.* 113, as well as by that prescribed by *St.* 1789, *c.* 26, to restore the goods in like good order and condition as when taken.

After a debtor's goods were seized on a writ of attachment, and also on an execu- tion, he was discharged under the United States bankrupt law of 1841 : The goods were replevied, and the defendant in replevin obtained judgment for a return thereof, and brought a suit on the replevin bond. *Held,* that he was entitled to recover, as damages, the full value of the goods, if it were not shown that their full value was not necessary to satisfy the execution on which they were seized.

A plaintiff in replevin, after replevying articles of household furniture, horses, &c sold part thereof. and so used other parts, as to lessen their value: The defend- ant in replevin obtained judgment for a return of the property replevied, and twelve per cent. damages and costs, which were paid : Twelve months after said judgment was rendered, the defendant in replevin sued out a writ of return, upon which the officer returned that he could not find the property : The defendant in replevin then brought his action on the replevin bond. *Held,* that he was entitled to recover the value of the property, as set out in the bond, with six per cent. damages from the time of the judgment for a return.

Debt on a replevin bond. The writ was dated May 19th

1842, was returnable to the then next October term of this court, and was served on the 29th of September 1842.

The parties submitted the case to the court on the following agreed statement: On the 18th of August 1838, the plaintiff, as deputy sheriff, seized certain personal property, viz. horses, wagons, household furniture, &c. on a writ and execution, in favor of Ward & Glover, against Eli Robbins. On the 22d of the same month, the present defendant replevied said property on a writ returnable at the September term 1838, of the court of common pleas. That suit was afterwards removed into the supreme judicial court, and was tried at April term 1841. A verdict was found in favor of the plaintiff, (the present defendant,) as to a portion of the property replevied, and in favor of the defendant, (the present plaintiff,) as to the remainder, with damages at the rate of twelve per cent. computed to the time of the trial. Exceptions were taken by the defendant, (the present plaintiff,) to the ruling of the judge at the trial as to that part of the property for which the verdict was against him ; and these exceptions were argued at the October term of this court, 1841 ; and, at the following April term, judgment was rendered upon the verdict, and for a return to the present plaintiff of that part of the property for which the jury had returned a verdict in his favor. (See 3 Met. 144.) The present plaintiff then sued out his writ of return, dated May 1842, and delivered it to the sheriff of this county, who duly made return that he could not find the property. This writ of return was not served till the 29th of September 1842, which was the last day of service. At the time of serving said writ, the sheriff declined to wait for the defendant to collect together that portion of the property which was not sold, and was in the immediate neighborhood, or to take in money the value of that part of the property which had been sold, but made immediate service of the writ in the present suit.

The said Eli Robbins, after the commencement of the aforesaid suit in replevin, was duly declared bankrupt, by the district court of the United States for the district of Massachusetts, and duly received his discharge, under the United States bankrupt

law of 1841, before the commencement of the present suit. And the damages recovered in said replevin suit, and costs, have been paid ; but the property has not been returned. A part of the property was sold by the plaintiff in replevin, (the present defendant,) before the replevin suit was determined, and the rest of it has been used by him ever since it was replevied.

" The plaintiff contends, 1st, that he is entitled to the twelve per cent. damages given by the Rev. Sts. *c.* 113, from the time to which they were computed by the jury, to the present time. 2d. That he is entitled to the value of the goods at the time when they were replevied ; and that he is not bound to receive the same, worn and deteriorated by age, as they are at this time ; that the defendant in this suit was bound to return the property in the like good order and condition as when taken in replevin.

" The defendant contends ; 1st, that there has been no sufficient demand on the writ of return. 2d. That he was not bound to return the goods in like good order and condition, as when taken in replevin. 3d. That if any judgment can be rendered for the plaintiff in this suit, it must be for nominal damages, by reason of the bankruptcy of the said Robbins. 4th. That if the plaintiff is entitled to the value of the goods at all, it is their value at the time of the demand on him for a return."

It was agreed that the court might render such judgment, upon the foregoing facts, as they might deem proper ; and, if necessary, appoint an assessor to determine the value of the property.

*Crowninshield,* for the plaintiff.

*Nelson,* for the defendant.

HUBBARD, J. The defendant contends that the present action cannot be maintained, because the plaintiff has elected to pursue the remedy upon his writ of return, and that he cannot prosecute his action upon the replevin bond until he has ex- nausted his other remedy by prosecuting his writ of reprisal ; and that, if it were not for the language of the Rev. Sts. *c.* 113

§ 39, he would be deprived of all claim under the bond, in con-sequence of the election made by him to claim the property on the writ of return ; and for this he relies on the decision in *Butler* v. *Hildreth,* 5 Met. 49. That was an action of trover, brought by an assignee, for a quantity of goods sold to the de-fendant, by persons who shortly after became insolvent, and was attempted to be maintained on the ground that the sale was fraudulent as against the vendors' creditors. The defence relied upon was, that the plaintiff, with a knowledge of all the circum-stances, had previously commenced an action on the notes given for the goods, and had thereby affirmed the sale ; and that he could not afterwards resort to an action of trover, and maintain that the sale was void. But the court, in that case, held that it was not an election of remedies on the part of the plaintiff, but an election of rights — of rights which were inconsistent with each other; that the party, with a knowledge of the facts, by affirming the sale, abandoned all claim of property in the goods. But, in the present case, a claim for the goods upon the writ of return, and a claim upon the bond for the value of them because they are not returned, are not distinct rights. The right is the same to the qualified property in the goods themselves, or to their value, in case they are not returned ; but the remedies are necessarily distinct, and the party has, not merely his elec-tion, but the right, by law, to pursue both. This the defendant admits ; but he contends that the party, having elected to sue out his writ of return, must pursue his course to the end, before he can turn round and avail himself of the other provision of the statute ; and that, as he has not sued out his writ of reprisal, (as it is now called by the Rev. Sts. *c.* 113,) he cannot, at the present time at least, maintain this suit. And for this, he relies upon the language of the Rev. Sts. *c.* 113, § 39, which is, that "the foregoing provisions" (relating to the writs of return and reprisal) "shall not preclude the defendant from resorting to his remedy on the replevin bond, or to his remedy against the officer for the insufficiency of the sureties in the bond, to recover the value of the goods, together with the loss or damage caused by the replevin thereof. notwithstanding he may have

endeavored to recover the same by the writs of return and of reprisal, as before provided." This section was introduced by the learned commissioners, as they say, " merely to prevent doubts, and to indicate the remedies which the defendant may resort to, when necessary." It is obvious then, that there was no intention to alter the law as it existed previously to passing the revised statutes. The statute is intended to protect the rights of persons, in goods and chattels, which have been unlawfully taken from them, and, at the same time, to provide a sufficient indemnity to the party from whom the goods and chattels have been taken, in the event that they are entitled to a restitution of them ; and it is to receive a liberal construction. If the framers of the revised statutes had intended to compel the party to exhaust one remedy before resorting to the other, the language, we think, would have been imperative, that the party should first sue out his writs of return and of reprisal, and if he failed in procuring satisfaction for his damages by either of those remedies, that then he might commence his action upon the replevin bond.

Prior to the revised statutes, the defendant in replevin was not required to exhaust his remedy on the writ of return. The condition of the bond given by the plaintiff in replevin was, that he should prosecute his replevin to final judgment, pay the damages and costs, and return the goods, if judgment should be against him. And it was no good plea to an action on the bond, to say that the plaintiff, though he had sued out his writ of return, had not delivered it to an officer to be executed ; nor that he had never demanded the goods. *Sevey* v. *Blacklin*, 2 Mass. 541. So in *Turnor* v. *Turner*, 2 Brod. & Bing. 107, it was decided that the not prosecuting the replevin suit with effect was a breach of the condition, and that the action was maintainable on the replevin bond, after a judgment for a return, though it did not appear that the writ of return had been issued ; and it was held that the party had his election of his remedies. And we think that it was intended, by the Rev. Sts. *c.* 113, that the party should have this right of election, as to his remedies, on his claim to indemnity being established by a judgment ren

18 *

dered in his favor, without being compelled, in the first instance, to prosecute his remedy for a restoration of the goods themselves. See also *Perreau* v. *Bevan*, 5 Barn. & Cres. 284, and 8 Dowl. & Ryl. 72.

It is also ·objected, that the recovery in this case should be of nominal damages merely ; on the ground that Robbins, the first judgment debtor, has become bankrupt, and the original attachment of his property, by Ward & Glover, been thereby dissolved ; and that the defendant is liable to the assignee of Robbins for the delivery of the property to him. It is true that goods held under attachment cannot be retained by the officer against the claim of the assignee of the debtor, on his becoming insolvent, and that receiptors of property are, for the same cause, relieved from their obligation to return or account for the goods. *Grant* v. *Lyman*, 4 Met. 470. But goods seized on execution are not affected by the subsequent insolvency or bankruptcy of the debtor ; the right of the judgment creditor being then fixed, and the goods being bound by the levy. *Clarke* v. *Minot*, 4 Met. 346. *Ames* v. *Wentworth*, 5 Met. 294. In the present case, the goods were not only taken on a writ of attachment, but were also seized on execution, in favor of Ward & Glover, the judgment creditors; and there is nothing to show but that the whole value of the goods attached was needed to satisfy the execution. The defendant has offered no evidence on the point, and the objection cannot prevail.

It was also argued, that there was no sufficient demand on the writ of return ; but the point was not pressed. And we are of opinion that the objection is not well founded. The writ of restitution was placed in the officer's hands, and his return upon it is sufficient evidence of a demand, to authorize the commencement of this action, if a demand is necessary. But whether necessary or not, the facts of this case do not require us to determine.

A more important question is, what rule shall be adopted in the assessment of the damages. And in this, it is said, is involved the inquiry, whether the party was bound to return the goods in like good order and condition as when taken. The

suggestion, that the party is not now bound to return the goods in the same condition as when taken, is founded on a comparison of the statutes. In *St.* 1789, *c.* 26, § 4, where the form of the writ of replevin is given, one proviso of the writ is, "and also to return and restore the same goods and chattels, in like good order and condition as when taken, in case such shall be the final judgment;" whereas, in the Rev. Sts. *c.* 113, §§ 19, 29, where the plaintiff is required to give bond, the language is, "and also to return the said property, in case such shall be the final judgment," without any mention that the goods and chattels are to be restored in like order and condition. But we think that this criticism, though ingenious, is not well founded. It is very evident from the commissioners' report that no such alteration in the law was contemplated; and it is to be observed that they have not given the form of the writ, as was done in the prior statute, and which contained the proviso; but in the 28th section, they provide that the writ " shall be in the same form, substantially, that has been heretofore established and used." Such an alteration, as is suggested by the defendant's counsel, would be a substantial difference; and we must therefore conclude that no such change was intended by this revision of the law.

The principal question is, as to the rule that shall govern in the assessment of damages in this case. The defendant contends that the true rule is the value of the property at the time of the demand made for its redelivery, and that this rule is established by the case of *Swift* v. *Barnes,* 16 Pick. 194. In that case, a quantity of sperm oil was replevied, and there was judgment for a return, and a writ of restitution issued, and a demand was made of the property, but it was not redelivered. The question made by the parties was, whether the valuation in the bond should be the measure of damages, or whether judgment should be rendered for the actual value of the oil at the time of the service of the writ of replevin, or when the verdict was given, or on the rendition of judgment, or at the date of the demand upon the writ of restitution. The oi. having risen in value after it was replevied, it was argued by

the plaintiff, that the value of the oil at the time of the rendi-
tion of judgment, or at the time of the demand made on the
writ, was the rule to be adopted ; while it was contended by
the defendant, that the value of the oil at the time of the origi-
nal taking should determine the amount of damages, and that
the circumstance that a bond had been given should make no
difference.   The court, after a review of the authorities cited,
was of opinion that the value of the property replevied, at the
time it was demanded on the writ of restitution, was the true
measure of damages ; and Mr. Justice Wilde, who gave the
opinion, referred to the general rule of damages on all contracts
to deliver goods on demand, and expressed the opinion that
there was no essential difference between this contract and the
common one to deliver goods.   And the court further held, that
the party who made the bond, and fixed the value, might well
be bound by it, as was decided in *Gordon* v. *Jenney*, 16 Mass.
465, and that it did not follow that the other party, who had no
agency in fixing the amount, should be concluded by it, because
the property had risen in value.   But a leading feature in that
decision is this, namely, that the party injured was entitled to
an indemnity, and could not receive it unless the actual value
of the goods, at the time of the demand made, was adopted as
the rule to fix the measure of damages.   But though the court
state the rule, by which the damages are to be ascertained, in
strong and general terms, yet it does not embrace every case
arising under the process of replevin ; and the case at bar is
one of those which are to be excepted from its operation.   The
goods replevied consisted of household furniture, horses, cattle,
wagons, &c. which had been more or less used.   At the time
of the demand, some of them had been sold ; and others were
deteriorated and much depreciated in value by further use.
They were not all of them goods, like oil or other articles of
merchandize, of a current market price ; and some having been
sold, and others thus deteriorated, the value at the time of
the demand could not be ascertained , nor would that value
be the measure of damages without a proper allowance for
the depreciation, which, under the circumstances of this case,

could not be computed upon any accurate data. The only mode, therefore, to give the plaintiff the indemnity to which he is entitled, is, to take the estimate of the value as set out in the replevin bond. To this is to be added six per cent. on such value from the time of the judgment in the action of replevin. It not sufficiently appearing but that the plaintiff might have had his writ of return immediately, or have put his bond in suit, he is not entitled to the penal damages since that time.

If the parties do not agree on the amount, an assessor is to be appointed to calculate the damages, and make return of the same, upon which judgment will be entered.